UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN BENJAMIN, Plaintiff, -against- ANGEL QUIROS, *et al*, Defendants. | : | **INITIAL REVIEW ORDER PURSUANT TO 28 USC § 1915A** 3:26-CV-227 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

Plaintiff John Benjamin is a sentenced prisoner housed at Corrigan-Radgowski Correctional Center ("Corrigan").[1] He filed a complaint *pro se* and *in forma pauperis* alleging that prison officials at Osborn Correctional Institution ("Osborn") violated his constitutional rights. Plaintiff names twenty-five defendants: Connecticut Department of Corrections Commissioner Angel Quiros; Warden of Osborn Robert Martin; Deputy Warden Moore; Lieutenant Schold; Nurses Brett, Amy, Carrie, and Erica; Dr. Thurgood; C.E.C. Industry Manager Munroe; C.E.C. Industry Supervisors Michael Gongon and Ahmed; Kitchen Supervisors Coleman and "John Doe," Counselor Supervisor McKenzie; Coordinator for the ADA of the Connecticut Department of Corrections Doolittle; and Corrections Officers Jefferson, Cotto, Leslie, Valdez, Johnson, Lee, Berry, Finagan, and Eastman.[2] Plaintiff sues

[1] *See* Department of Correction ("DOC"), *Inmate Information*, https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=358167 (last visited July 14, 2026) (showing that Plaintiff was sentenced in 2015 and currently resides at Corrigan). The Court may take judicial notice of content on this website. *See*, *Taveras v. Semple*, No. 3:15CV00531 (SALM), 2023 WL 112848, at *1 n.1 (D. Conn. Jan. 5, 2023) (taking judicial notice of content on DOC offender information search website).

[2] Compl., ECF No. 1 ¶¶ 4–28.

each defendant in both their individual and official capacity.[3] For reasons that follow, Plaintiff may pursue damages from Dr. Thurgood and Nurse Carrie on his Eighth Amendment deliberate indifference to serious medical needs claim. All other claims are dismissed, and all other defendants are terminated.

## I. <u>FACTUAL BACKGROUND</u>

While the Court does not set forth all the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its rulings below.

Plaintiff alleges that he was working at the Osborn clothing factory on February 16, 2024.[4] While eating lunch in the clothing factory's "chow hall," he heard a loud noise above him.[5] As Plaintiff looked up, he saw what appeared to be shards of glass or ice falling towards him.[6] Large pieces of glass from a window above fell on the table at which Plaintiff was sitting.[7] A "couple small pieces" of this glass hit Plaintiff in his eyes and face.[8] Plaintiff turned in his seat to avoid the falling glass, but he caught his leg in the table.[9] Plaintiff twisted his back while attempting to free himself from the table.[10]

---

[3] *Id.* ¶ 29

[4] *Id.* ¶ 30.

[5] *Id.* ¶¶ 30–31.

[6] *Id.* ¶ 32.

[7] *Id.* ¶¶ 33, 36.

[8] *Id.* ¶ 33.

[9] *Id.* ¶ 34.

[10] *Id.* ¶ 35.

After Plaintiff freed himself from the table, he felt "excruciating pain" in his lower back.[11] Plaintiff moved to a nearby table, where correctional officers Jefferson and Cotto approached Plaintiff and asked him multiple questions to determine if Plaintiff was injured.[12] Plaintiff told Jefferson and Cotto that he could not stand or turn his body and that his eye was irritated.[13] Plaintiff resisted Jefferson and Cotto's attempts to move Plaintiff, telling the officers that he was in pain.[14] Cotto then reluctantly called for a wheelchair.[15]

Officers slowly helped Plaintiff get into the wheelchair and transported him to the Medical Department.[16] Nurses Carrie and John Doe were awaiting Plaintiff at the Medical Department.[17] Plaintiff told the nurses what had happened in the chow hall, stated that his back was injured, and asked the nurses to examine Plaintiff's eyes.[18] Carrie examined Plaintiff's eyes and told Plaintiff that he should stop rubbing them.[19] Plaintiff asked Carrie if he could rinse his eyes out with the eye washer in the room.[20] Carrie permitted Plaintiff to rinse his eyes, and another nurse wheeled Plaintiff to the x-ray room.[21] Once in the x-ray room, the doctor

---

[11] *Id.* ¶ 37.

[12] *See id.* ¶¶ 38–39.

[13] *Id.* ¶ 40.

[14] *Id.* ¶ 41.

[15] *Id.* ¶ 42.

[16] *Id.* ¶ 43.

[17] *Id.* ¶ 44.

[18] *Id.* ¶ 45.

[19] *Id.* ¶ 46.

[20] *Id.* ¶ 47.

[21] *Id.* ¶¶ 48–49.

"cautiously" assisted Plaintiff in getting onto the x-ray table.[22] Medical staff took Plaintiff back to the treatment room to see Dr. Thurgood after medical staff completed x-rays.[23]

As Plaintiff began telling Thurgood about his pain, Thurgood "cut [Plaintiff] off," told Plaintiff that he was "not in that much pain," and told Plaintiff that he was not "getting any walking assistance."[24] Plaintiff "pleaded" for Thurgood to listen to Plaintiff, but Thurgood "kept cutting [Plaintiff] off and then started to get belligerent and unprofessional[,] using profanity and disrespectful behavior."[25] Thurgood told the nurses in the room to help Plaintiff walk and to "kick him out" for "wasting her time."[26] Thurgood then "stormed out of the room."[27]

Carrie told Plaintiff to get up and try to walk.[28] Plaintiff told Carrie that he could not get up and walk because of his pain.[29] Carrie lifted Plaintiff out of the wheelchair.[30] Plaintiff told Carrie that his pain made him "unbalanced."[31] Carrie let go of Plaintiff and told him to

---

[22] *Id.* ¶ 50.

[23] *Id.* ¶ 51.

[24] *Id.* ¶ 52.

[25] *Id.* ¶ 53.

[26] *Id.* ¶ 54.

[27] *Id.*

[28] *Id.* ¶ 55.

[29] *Id.* ¶ 56.

[30] *Id.* ¶ 57.

[31] *Id.*

walk.[32] As Plaintiff attempted to walk, he lost his balance and hit his head on the sink before falling to the floor.[33]

After Carrie repeatedly yelled that Plaintiff had hit his head, medical staff called a "Code White" for a medical emergency.[34] Plaintiff awoke in a treatment room surrounded by nurses, correctional officers, and a lieutenant.[35] Staff members asked Plaintiff numerous questions, but when Plaintiff attempted to respond, Thurgood cut Plaintiff off and told Plaintiff, "I'm not giving you nothing."[36] Officials subsequently wheeled Plaintiff to the "A/P room," where a transport van was waiting.[37] Officials then transported Plaintiff to UConn's medical center, where Plaintiff waited six hours to receive pain medication.[38]

Once back at Osborn, prison officials took Plaintiff to the infirmary, where he remained for the next four days.[39] Each time a nurse checked on Plaintiff, he told the nurse about his blurry vision, headaches, light sensitivity, and back and leg pain.[40] The nurses always told Plaintiff that he had to wait to see the "Providers" about these issues.[41] On the last day in which Plaintiff was in the infirmary, Thurgood told Plaintiff that his symptoms "sound[ed] like a

[32] *Id.* ¶ 58.

[33] *Id.* ¶ 60.

[34] *Id.* ¶¶ 61–62.

[35] *Id.* ¶ 63.

[36] *Id.* ¶ 64.

[37] *Id.* ¶¶ 65, 67.

[38] *Id.* ¶¶ 67–68.

[39] *Id.* ¶ 69–70.

[40] *Id.* ¶ 71.

[41] *Id.* ¶ 72.

concussion, but you don't have that."[42] Thurgood "continued to be disrespectful" towards Plaintiff and "reluctantly" gave Plaintiff a cane.[43] Plaintiff continues to experience "blurred vision, frequent loss of balance, along with a multi[tude] of other maladies…."[44]

## II. LEGAL STANDARD

The Prison Litigation Reform Act ("PLRA") requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

## III. DISCUSSION

Plaintiff seeks damages, injunctive relief, and declaratory relief from Defendants in their official and individual capacities.[45]

### A. Claims for Injunctive and Declaratory Relief

To the extent Plaintiff seeks injunctive and declaratory relief,[46] "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

---

[42] *Id.* ¶ 74.

[43] *Id.* ¶ 75.

[44] *Id.* ¶ 93.

[45] *See id.* ¶¶ 1, 29.

[46] *See id.* ¶ 1.

Thus, because Plaintiff transferred from Osborn to Corrigan, *see supra* note 1, his claims for injunctive and declaratory relief against any Osborn official (all defendants except Angel Quiros)[47] are now moot. *See Salahuddin*, 467 F.3d at 272. While Quiros is not an employee of Osborn, Plaintiff's claims for injunctive and declaratory relief against Quiros are also moot because Quiros has retired.[48] *See*, *e.g.*, *Thompson v. Cook*, No. 20-CV-381 (VLB), 2020 WL 5849243, at *6 (D. Conn. Oct. 1, 2020) (dismissing claims for injunctive relief against certain defendants as moot because "these defendants have retired or moved to positions from which they cannot provide the requested injunctive relief."). Because Plaintiff's claims for injunctive and declaratory relief are now moot, they must be dismissed. *See Thompson v. Carter,* 284 F.3d 411, 415–16 (2d Cir. 2002) (affirming district court's dismissal of claims for prospective injunctive and declaratory relief against defendants from transferor facility).

**B. Official Capacity Claims for Damages**

To the extent Plaintiff asserts official capacity claims for damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (affirming dismissal of "claims for damages against all of the individual defendants in their official capacities … because these claims are barred by the Eleventh Amendment." (citing *Kentucky v. Graham,* 473 U.S. 159,

---

[47] *See id.* ¶¶ 4–28.

[48] *See* State of Connecticut, *Governor Lamont Announces Correction Commissioner Angel Quiros To Retire in May*, https://portal.ct.gov/governor/news/press-releases/2026/02-2026/governor-lamont-announces-correction-commissioner-angel-quiros-to-retire-in-may?language=en_US (last visited July 14, 2026). The Court may take judicial notice of content on this government website. *See Vill. Green At Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022) (taking judicial notice of content on the Town of Islip website).

169 (1985))). Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

**C. Individual Capacity Claims for Damages**

To seek damages from any defendant in his or her individual capacity, Plaintiff must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991))).

"Personal involvement may be shown by 'direct participation,' which requires in this context 'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir. 2001)). This is true with respect to supervisory officials, as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

But before the Court considers whether any defendant "participat[ed]" in "conduct constituting a violation of the victim's rights," *Victory*, 814 F.3d at 67 (cleaned up), it must first consider the threshold question of whether Plaintiff's complaint sufficiently alleges that any defendant violated his constitutional rights. *See Wright*, 21 F.3d at 501 (only personal involvement in "alleged constitutional *deprivations*" is required (emphasis added) (cleaned up)); *see also Brown v. Dep't of Corr.*, No. 16-CV-376 (WIG), 2021 WL 124417, at *8 (D.

Conn. Jan. 13, 2021) (agreeing that plaintiff's placement in administrative segregation "cannot serve to establish *any* personal involvement in a constitutional violation because no constitutional violation occurred." (cleaned up)).

Construing the complaint "liberally" and interpreting it "to raise the strongest arguments that it suggests," *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), the Court understands Plaintiff to raise an Eighth Amendment deliberate indifference to serious medical needs claim, an Eighth Amendment conditions of confinement claim, and a Fourteenth Amendment substantive due process claim.[49] The Court discusses each claim in turn.

**i. Deliberate Indifference to Serious Medical Needs Claim**

Deliberate indifference claims may arise under the Eighth Amendment's cruel and unusual punishment clause or the Fourteenth Amendment's due process clause, depending on whether the plaintiff was a sentenced prisoner or a pretrial detainee during the events in question. *See Rivera v. Viger*, No. 21-CV-470 (VAB), 2021 WL 3269095, at *2 (D. Conn. July 30, 2021). Because Plaintiff was a sentenced prisoner in February of 2024, *see supra* note 1, the Court evaluates his deliberate indifference claim under the Eighth Amendment, rather than the Fourteenth Amendment. *See Abernathy v. Comm'r of Correction*, No. 20-CV-628 (VAB), 2021 WL 1240018, at *3 (D. Conn. Apr. 2, 2021) (concluding that Plaintiff's "alleged

[49] *See id.* ¶ 80 (alleging that the DOC "violated Plaintiff Benjamin[']s rights and constituted deliberate indifference, cruel [and] unusual punishment, condition[s] of confinement[,] and a due process violation under the Eighth and Fourteenth Amendment to the United States Constitution." Plaintiff also appears to raise a claim for "gross negligence," *id.* at 5, but "negligence … claims are not actionable under § 1983," *Nogbou v. Mayrose*, 400 F. App'x 617, 620 (2d Cir. 2010) (summary order), and "gross negligence … is not an independent cause of action under Connecticut law." *Jane Doe CLF F1 v. CooperSurgical, Inc.*, No. 3:25-CV-1051 (SVN), 2026 WL 788825, at *4 (D. Conn. Mar. 20, 2026).

deliberate indifference claims are governed by the Eighth Amendment, rather than the Fourteenth Amendment, because he is a sentenced prisoner rather than a pretrial detainee.”).

To state a claim for deliberate indifference to serious medical needs under the Eighth Amendment, the prisoner must allege facts satisfying two components, one objective and one subjective. *See Spavone v. New York State Dep’t of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The objective component requires the prisoner to demonstrate that the alleged deprivation of medical care was “sufficiently serious.” *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). This objective showing in turn requires a court to make two inquiries. *See Salahuddin*, 467 F.3d at 279.

First, the Court must determine whether the inmate was “actually deprived of adequate medical care” by an official’s failure “to take reasonable measures in response to a medical condition….” *Id.* at 279–80 (cleaned up); *see also Davila v. UConn Med. Ctr.*, 353 F. App’x 490, 492 (2d Cir. 2009) (summary order) (“At the most basic level, to establish a claim under the Eighth Amendment for deliberate indifference, the plaintiff must first demonstrate that he was ‘actually deprived of adequate medical care.’” (quoting *Salahuddin*, 467 F.3d at 279)). “[P]rison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.” *Salahuddin*, 467 F.3d at 279–80 (cleaned up).

Second, the Court must determine “whether the inadequacy in medical care is sufficiently serious,” requiring an examination of “how the offending conduct is inadequate and what harm, if any, the inadequacy has or will likely cause the prisoner.” *Id.* at 280. This examination differs based on whether the issue is failure to provide *any* medical treatment,

inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003). Thus, this inquiry is necessarily contextual and fact-specific. *Id.* at 185.

If a plaintiff was completely deprived of medical care, "courts examine whether [his or her] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the plaintiff received medical treatment but it was inadequate, "the seriousness inquiry is narrower," and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (cleaned up). "The Second Circuit has held that a short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where 'the alleged lapses in treatment are minor.'" *Ferguson v. Cai*, No. 11 CIV. 6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (quoting *Smith,* 316 F.3d at 186). "On the other hand, 'the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment.'" *Id.* (quoting *Smith,* 316 F.3d at 186).

As to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, which is a state of mind equivalent to the familiar standard of recklessness as used in criminal law." *Smith*, 316 F.3d at 184 (cleaned up). Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.[.]" *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

But "a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference, nor does the fact that

an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." *Young v. Choinski*, 15 F. Supp. 3d 172, 182–83 (D. Conn. 2014) (cleaned up); *see also Chance*, 143 F.3d at 703 (noting that "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]"). Allegations constituting negligence or medical malpractice are insufficient to support an Eighth Amendment deliberate indifference claim. *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (quoting *Hathaway*, 99 F.3d at 553).

As to the first inquiry of the objective component, Plaintiff adequately suggests that he was "actually deprived of adequate medical care," *Salahuddin*, 467 F.3d at 279, when Thurgood told Plaintiff that he was "not getting any walking assistance" and "kick[ed] [Plaintiff] out" of the Medical Department for "wasting [Thurgood's] time."[50] Thus, the Court must consider, under the second inquiry of the objective component, "whether the inadequacy in medical care is sufficiently serious[,]" *Salahuddin*, 467 F.3d at 280, by examining whether prison officials failed to provide any treatment, inadequate treatment, or delayed treatment. *See Smith*, 316 F.3d at 185–86.

The allegations in the complaint do not suggest that prison officials failed to render "any treatment" during the entire time period described the complaint. For instance, even

[50] ECF No. 1 ¶¶ 52, 54.

before Thurgood "kick[ed] [Plaintiff] out" of the Medical Department,[51] Carrie permitted Plaintiff to rinse his eyes and another doctor conducted an x-ray examination of Plaintiff.[52] And after Plaintiff fell and hit his head in the Medical Department, prison officials transported Plaintiff to UConn's medical center, where he received pain medication.[53] After returning to Osborn, Thurgood also "reluctantly" gave Plaintiff a cane during Plaintiff's last day in the infirmary.[54] Thus, because Plaintiff received some treatment after his initial injury, the Court "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and citation omitted); *see also Nelson v. Sullivan*, No. 3:23-CV-878 (SVN), 2025 WL 2494272, at *6 (D. Conn. Aug. 29, 2025) (because plaintiff "received *some* treatment in the form of topical lidocaine, the Court's inquiry focuses on whether this treatment was inadequate and whether he was harmed by the delay in obtaining what he believes is adequate treatment (surgery)")

Here, "the challenged delay or interruption in treatment," *Salahuddin*, 467 F.3d at 280 (cleaned up), was Thurgood's refusal to provide Plaintiff with any treatment for his injuries sustained in the chow hall.[55] This ultimately resulted in Plaintiff's falling and hitting his head on the sink after Carrie forced Plaintiff to walk at Thurgood's direction.[56] Forcing Plaintiff to

---

[51] *Id.* ¶ 54.

[52] *See id.* ¶¶ 48–51.

[53] *Id.* ¶¶ 67–68.

[54] *Id.* ¶¶ 74–75.

[55] *Id.* ¶¶ 52, 54.

[56] *Id.* ¶¶ 54, 60.

walk when Plaintiff was "unbalanced"[57] "creat[ed] a substantial risk of injury…." *Smith*, 316 F.3d at 186. Indeed, that risk was realized when Plaintiff fell and hit his head on the sink.[58] Accordingly, Plaintiff has alleged sufficient facts to satisfy the objective component of a deliberate indifference to serious medical needs claim.

Plaintiff has also alleged sufficient facts to satisfy the subjective component of such a claim. By forcing Plaintiff to walk after he voiced concerns about his pain and lack of balance,[59] Thurgood and Carrie "evinc[ed] 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 839); *see also Giraud v. Cuevas*, No. 3:20-CV-906 (SRU), 2021 WL 1535694, at *4 (D. Conn. Apr. 19, 2021) ("[a]llegations that [the doctor] was aware that [plaintiff] was in extreme pain and may have developed an infection at the extraction site yet failed to offer adequate treatment are sufficient to evince 'a conscious disregard of a substantial risk of serious harm.'" (quoting *Chance*, 143 F.3d at 703)). Accordingly, Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim may proceed.

Plaintiff may not, however, pursue this claim against all defendants. Thurgood and Carrie are the only defendants who either "ha[d] knowledge of the facts that rendered the conduct illegal" (Carrie) or who "order[ed] … others to do the unlawful acts" (Thurgood), such that they were personally involved in the alleged constitutional violation. *Provost*, 262 F.3d at 155; *see also Jordan v. Wright*, No. 24-CV-1166 (VAB), 2024 WL 3742767, at *10

---

[57] *Id.* ¶ 57.

[58] *Id.* ¶ 60.

[59] *See* Compl., ECF No. 1, ¶¶ 52, 54, 56, 59–60.

(D. Conn. Aug. 9, 2024) (noting that "merely being present when a constitutional violation occurs is insufficient to establish personal involvement."); *Ratches v. Guerrera*, No. 24-CV-1319 (SVN), 2025 WL 437494, at *2 (D. Conn. Feb. 7, 2025) (dismissing claims against Governor and DOC Commissioner because plaintiff failed to "allege[ ] any facts in the body of his complaint about the[ir] direct personal involvement…."). Thus, Plaintiff may pursue damages against only Thurgood and Carrie. *See Wright*, 21 F.3d at 501. This claim is dismissed against all other defendants for lack of personal involvement. *See Kinnel v. Barton*, No. 24-CV-1701 (OAW), 2025 WL 2694859, at *3 (D. Conn. Sept. 22, 2025) (dismissing claims against defendants for lack of personal involvement in a constitutional violation).

**ii. Conditions of Confinement Claim**

Like an Eighth Amendment deliberate indifference to serious medical needs claim, an Eighth Amendment conditions of confinement claim also requires a plaintiff to satisfy an objective and subjective component. *See Suarez v. Morton*, 170 F.4th 33, 59 (2d Cir. 2026). To state an Eighth Amendment conditions of confinement claim, "a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with deliberate indifference." *Id.* "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (cleaned up). "To establish … deliberate indifference, a plaintiff must show something more than mere negligence[.]" *Id.* at 106 (cleaned up). Rather, the prison official must have acted with "a

mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280.

In the absence of any other explanation, the Court presumes that Plaintiff's conditions of confinement claim relates to the broken window that injured him.[60] But even if this broken window posed "an unreasonable risk of serious harm to [Plaintiff's] current or future health," *Suarez*, 170 F.4th at 59, in satisfaction of the objective component, Plaintiff has not alleged sufficient facts suggesting that any "official [knew] of and disregard[ed] an excessive risk to inmate health or safety," in satisfaction of the subjective component. *Cuoco*, 222 F.3d at 107 (cleaned up).

Plaintiff maintains only that, "[h]ad the window(s) been secured appropriately, the plaintiff would not have been injured…."[61] Setting aside that Plaintiff does not allege *who* should have secured the window (such that he could establish their personal involvement), this allegation sounds, at most, in negligence. *See Cardenas v. Mills*, No. 3:20-CV-635 (KAD), 2020 WL 2615521, at *2 (D. Conn. May 22, 2020) (allegation that "defendant should have supervised the kitchen staff and food preparation more carefully to be sure that no foreign materials were in the food tray…. sounds in negligence and is insufficient to support an Eighth Amendment violation claim." (citing *Farmer* 511 U.S. at 835)). Because "a plaintiff must show something more than mere negligence" to satisfy the subjective component, *Cuoco*, 222 F.3d at 107 (cleaned up), this claim must be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1); *see also Cardenas*, 2020 WL 2615521, at *1

[60] *See id.* ¶ 33.

[61] *Id.* ¶ 93.

(dismissing Eighth Amendment conditions of confinement claim alleging that kitchen supervisor "failed to supervise the kitchen workers to ensure that no foreign objects were in the food trays.").

**iii. Due Process Claim**

Lastly, Plaintiff asserts a "due process" claim.[62] The right to due process includes both a right to "substantive" due process and to "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). "While procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects these substantive rights no matter the process employed by the State." *Goode v. Doe*, No. 24-CV-830 (KAD), 2024 WL 4008245, at *2 (D. Conn. Aug. 30, 2024) (cleaned up).

Because Plaintiff's complaint does not allege any deprivation arising from inadequate procedures, the Court construes the Complaint as asserting a substantive due process claim related to an alleged violation of Plaintiff's bodily integrity. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). But the Supreme Court of the United States has held that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 273 (cleaned up). Because the Eighth Amendment "provides an explicit textual source of constitutional protection," *id.*,

[62] *Id.* ¶ 80.

against officials' deliberate indifference to a prisoner's serious medical needs or conditions of confinement, Plaintiff's substantive due process claim is subsumed by his Eighth Amendment claims and must be dismissed. *See*, *e.g.*, *Johnson v. Cook*, No. 19-CV-1464 (CSH), 2021 WL 2741723, at *20 (D. Conn. July 1, 2021) (concluding that if plaintiff was "alleging a substantive due process violation against the Defendants for the denial of medical or mental health treatment, such a claim is duplicative of her Eighth Amendment deliberate indifference to medical and mental health needs claims" and must be dismissed).

## IV. ORDERS

For the reasons set forth above, the Court enters the following orders:

(1) Plaintiff may proceed on his Eighth Amendment deliberate indifference to serious medical needs claim for damages against Dr. Thurgood and Nurse Carrie in their individual capacities.

(2) All other claims are **DISMISSED** without prejudice, and all other defendants are terminated. Plaintiff is permitted to file an amended complaint on or before **November 23, 2026** if he can allege facts overcoming the Court's reasons for dismissing the remaining claims. An amended complaint, if filed, **will completely replace the original complaint**, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint. If Plaintiff declines to file an amended complaint within 30 days of this order, the Court will conclude that Plaintiff intends to proceed only on his Eighth Amendment deliberate indifference claims against Dr. Thurgood and Nurse Carrie.

(3) **The Clerk shall** verify the current work address for Defendants Dr. Thurgood and Nurse Carrie with the DOC Office of Legal Affairs, mail to them at their confirmed address a waiver of service of process request packet containing the complaint (ECF No. 1) and this

order on or before **November 13, 2026**, and also shall report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If Defendants fail to return the waiver request, the Clerk's Office shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on any such defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) **The Clerk shall** send a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) **The Clerk shall** send Plaintiff a copy of this Order.

(6) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they chose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed on or before **May 21, 2027**. Discovery requests need not be filed with the court.

(8) All motions for summary judgment shall be filed on or before **June 21, 2027**.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff

has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(11) Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED.**

Hartford, Connecticut
October 23, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge